IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| DONALD R. OLIVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No.7:11cv00289 |
| | ) |
| LISEL BROWE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

The defendants, Lisel Browe, Uzma Ali, M.D., and David Cox (collectively "defendants"), state the following in support of their Motion for Summary Judgment.

### I. STATEMENT OF THE CASE

Donald Oliver (hereinafter "Mr. Oliver" or "plaintiff"), an inmate previously incarcerated at Western Virginia Regional Jail[1], brings this action against the defendants alleging that they were indifference to his serious medical needs. Specifically, plaintiff alleges that Dr. Ali violated his constitutional rights by failing to adequately treat a jaw injury he sustained following a fighting incident on May 3, 2009; failing to treat his pain symptoms with medications; failing to arrange for surgical treatment of his injuries; and failing to ensure that he receive a soft diet. Further, Plaintiff alleges that Lisel Browe violated his constitutional rights by failing to ensure that he received surgical treatment for his jaw injury and that David Cox violated plaintiff's constitutional rights by failing to provide plaintiff with a soft diet.

These defendants assert that there is no genuine issue of material fact with regard to the plaintiff's failure to exhaust his administrative remedies concerning the claims in this suit and,

---

[1] Plaintiff is currently incarcerated at Augusta County Correctional Center.

therefore, under the Prison Litigation Reform Act, defendants Browe, Ali and Cox are entitled to judgment as a matter of law. Alternatively, plaintiff has failed to prove deliberate indifference by defendants Browe, Ali and Cox, and therefore the defendants' Motion for Summary Judgment must be granted.

## II.     STATEMENT OF UNDISPUTED FACTS

### A.     EXHAUSTION OF ADMINISTRATIVE REMEDIES- WESTERN VIRGINIA REGIONAL JAIL

1.  Plaintiff filed this lawsuit on June 21, 2011, in the United States District Court for the Western District of Virginia, Roanoke Division. See Plaintiff's Complaint, D.E. number 1.

2.  Plaintiff was incarcerated at Western Virginia Regional Jail ("WVRJ") from April 10, 2009 until his transfer to another institution on February 10, 2010. Exhibit 1, Affidavit of David Cox, ¶ 2.

3.  WVRJ has promulgated and adopted the formal grievance procedure in effect at all times relevant to this matter. Upon transfer to WVRJ, and per Standard Operating Procedure 16.02, the grievance procedure is explained to each inmate, to include Mr. Oliver, during their initial intake and again at their inmate orientation. In addition, every inmate is given a copy of the Inmate Rules and Regulations Handbook for the Western Virginia Regional Jail which includes a section regarding the accessibility of the inmate grievance procedure. Exhibit 1, Affidavit of David Cox, ¶ 3, 4.

4.  An inmate is deemed to have exhausted his administrative remedies if he complies with the deadlines for filing his grievances, using the forms and methods to file the complaints and appealing all decisions to the last level of appeal. Exhibit 1, Affidavit of David Cox, ¶ 5.

5.  Prior to an inmate submitting a formal grievance, he/she must demonstrate that he has made a good faith effort to resolve the issue informally by submitting an Informal Grievance

Complaint. This Informal Complaint must be submitted to the Assistant Security Commander or the Assistant Services Commander who will respond to the inmate's complaint within seven (7) working days. Exhibit 1, Affidavit of David Cox, ¶ 6.

6. If the inmate is dissatisfied with the Informal Grievance Complaint response, the complaint is sent to the Security Commander, Services Commander or his/her designee for formal resolution ("Step I"). The Security Commander or Services Commander, or his or her designee, must respond within ten (10) days of receipt of the unresolved informal grievance response. The inmate must respond to this response within seventy-two (72) hours indicting whether he is satisfied or dissatisfied with the Formal Inmate Grievance response. If the inmate is still dissatisfied with the response of the Services Commander, his grievances and any recommendations will be sent to the Superintendent or his/her designee for response ("Step II"), which is the last level of appeal. The Superintendent or his/her designee must respond in writing within ten (10) working days. Exhibit 1, Affidavit of David Cox, ¶ 7.

7. For the purposes of the grievance procedure at WVRJ, the Superintendent is the final appeal authority. Inmates must have pursued their complaints through Step II of the inmate grievance procedure before it will be deemed that all available administrative remedies have been exhausted. Exhibit 1, Affidavit of David Cox, ¶ 8.

8. Mr. Oliver filed one grievance concerning the provision of healthcare at WVRJ. . Exhibit 1, Affidavit of David Cox, ¶ 9.

9. Mr. Oliver submitted an informal grievance on January 8, 2010. Captain Winston responded to this informal grievance and she determined that the issue was non-grievable. . Exhibit 1, Affidavit of David Cox, ¶ 9.

10. Mr. Oliver was not satisfied with Captain Winston's response and sent the informal grievance back to her on January 20, 2010, which became a formal grievance. Exhibit 1, Affidavit of David Cox, ¶ 9.

11. On February 3, 2010, Deputy Superintendent Cox upheld the findings of Captain Winston, completing Step I of the Formal Inmate Grievance procedure. Mr. Oliver did not respond to or otherwise appeal this determination within seventy-two (72) hours of receipt and therefore his grievance was terminated. Exhibit 1, Affidavit of David Cox, ¶ 9.

12. Mr. Oliver failed to respond to or appeal the Step I determination deeming his formal grievance non-grievable and therefore, Mr. Oliver failed to exhaust his administrative remedies. Exhibit 1, Affidavit of David Cox, ¶ 10.

### B. 42 U.S.C. §1983 CLAIM

#### Uzma Ali, M.D.

1. Uzma Ali, M.D., is the Medical Director at WVRJ and has held that position since the facility opened in 2009. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 1.

2. Inmate Oliver was received at WVRJ on April 10, 2009 on transfer from Roanoke City Jail. On May 3, 2009, he was seen on sick call by Karen Melton, RN, with a primary complaint of left jaw pain following a fighting incident. Nurse Melton prescribed Tylenol, 500 mg for pain, and scheduled Mr. Oliver to be seen by a doctor. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 4.

3. On May 5, 2009, Inmate Oliver was seen by Dr. Russell Hendershot for evaluation of his left jaw pain. Among other things, Dr. Hendershot ordered x-rays of the jaw as well as a soft diet. The x-rays were performed that same day and showed no bony abnormalities. Dr. Hendershot's order for a soft diet remained in effect for the duration of Inmate Oliver's incarceration at WVRJ. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 5.

4. On June 4, 2009, Dr. Ali saw Mr. Oliver in follow up to his visit with Dr. Hendershot. Again, his subjective complaint was of jaw pain in his left TMJ as a result of a fight. Dr. Ali noted that his jaw was somewhat out of alignment and it appeared that there was tenderness around the left TMJ. Accordingly, Dr. Ali prescribed Motrin, 800 mg for pain, and scheduled Mr. Oliver to see an oral surgeon. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 6.

5. On June 9, 2009, Inmate Oliver was evaluated by Dr. Kevorkian, an oral surgeon in Vinton, Virginia. Dr. Kevorkian diagnosed Mr. Oliver with "closed lock of the left TMJ secondary to trauma" and ordered an MRI for further evaluation. Pursuant to Dr. Kevorkian's order, Dr. Ali prescribed Motrin, Flexeril and Lortab for Inmate Oliver. These medications were first administered on June 10, 2009. Mr. Oliver remained on Lortab for pain until January 14, 2010, when Dr. Ali discontinued the medication allowing a two-day taper. Inmate Oliver remained on Vicodin until January 22, 2010. He was prescribed Naproxin 500 mg from January 29, 2010 until he left WVRJ on transfer on February 10, 2010. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 7.

6. Throughout the time period of June 10, 2009 until January 14, 2010, Dr. Ali made various adjustments to Inmate Oliver's pain medications. On a number of occasions, Dr. Ali increased the amount of Lortab and Vicodin Inmate Oliver was to receive based upon his complaints of increased pain. However, Dr. Ali ultimately decided to take him off narcotic pain medications in light of his improving clinical condition (his jaw alignment improved over time) as well as reports of Inmate Oliver attempting to hoard these narcotic medications. Furthermore, Dr. Ali was advised in January 2010 that Inmate Oliver was purchasing "fireballs, Snickers, and jawbreakers" at the canteen. This information raised concerns in Dr. Ali's mind as to whether Mr. Oliver was exaggerating his symptoms in order to continue to receive narcotic pain medications. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 8.

7. The MRI requested by Dr. Kevorkian was performed on June 23, 2009. The radiologist report dated June 25, 2009 did document a tear of the left intra-articular disc. Dr. Kevorkian, by letter dated July 16, 2009, recommended surgical treatment "to reposition the disc, mobilize the joint and allow it to free up." Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 9.

8. Dr. Ali spoke with Dr. Kevorkian on August 13, 2009 to discuss the issue of the recommended surgery. Dr. Kevorkian advised that the surgery he recommended was purely elective. Dr. Kevorkian further advised that Mr. Oliver's condition would not deteriorate if he did not receive the recommended surgical intervention. Based on this information, Dr. Ali made the reasonable medical decision to not order outside TMJ surgery for Inmate Oliver. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 10.

9. On information and belief, Mr. Oliver has not undergone surgery for his TMJ injury even though he has been in the custody of the Virginia Department of Corrections since February 2010. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 11.

10. Mr. Oliver was on a mechanical soft diet from May 5, 2009 until he was discharged from WVRJ in February 2010. There is nothing in his medical records to indicate otherwise. Furthermore, Mr. Oliver voiced no complaints about not receiving a soft diet. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 12.

11. Mr. Oliver was obviously eating as there were no clinical signs or symptoms of malnourishment at any time he was incarcerated at WVRJ. On the contrary, Inmate Oliver's weight increased from 206 as documented on intake (April 4, 2009) to 214 pounds documented while he was in the segregation unit on December 1, 2009. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 12.

12. Inmate Oliver was on a soft diet from May 5, 2009 until his transfer to DOC. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 12.

13. While Mr. Oliver's jaw injury caused problems with proper jaw alignment and likely caused him pain while chewing, the TMJ injury diagnosed on the MRI is not a serious medical condition requiring surgical intervention. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 13.

14. Dr. Ali appropriately managed Mr. Oliver's symptoms with pain medications (NSAIDS and narcotic medications), referral to an oral surgeon, and with a mechanical soft diet. These are the appropriate, conservative treatments for TMJ injuries and Mr. Oliver's condition appeared to improve during his incarceration at WVRJ. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶ 14.

15. Narcotic medications are a very sensitive issue in a correctional environment. It was reported that Inmate Oliver attempted to "palm" his narcotic medications on at least one occasion. This is a practice whereby inmates attempt to stealthfully remove narcotic medication from the pill distribution area. Such a practice raises concerns about whether the patient is indeed suffering from pain symptoms, or is creating a pretense to receive such medications to use recreationally or to distribute to the correctional population. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶14.

16. Dr. Ali never acted with deliberate indifference to Mr. Oliver's medical needs and never failed to provide him with medical treatment that she knew he needed and has not ignored his complaints. Exhibit 2, Affidavit of Uzma Ali, M.D., ¶15.

### Lisel Browe, RN

17. Lisel Browe, R.N. ("Ms. Browe"), was the Health Services Administrator at WVRJ throughout the time that Mr. Oliver was incarcerated at the facility. Exhibit 3, Affidavit of Lisel Browe, R.N., ¶1.

18.     As the Health Services Administrator, Ms. Browe did not have any direct involvement in Mr. Oliver's clinical care. Ms. Browe never provided any nursing care or any type of health care services to Mr. Oliver. Specifically, Ms. Browe was not involved in the decision to refer Mr. Oliver to an outside oral surgeon as this was a decision made by Dr. Ali. Furthermore, Ms. Browe had no involvement in the decision as to whether Mr. Oliver should receive surgical treatment for his jaw injury as this decision was also made by Dr. Ali in conjunction with Dr. Kevorkian, the outside oral surgeon. Exhibit 3, Affidavit of Lisel Browe, R.N., ¶4.

19.     Mr. Oliver's canteen records at WVRJ in January 2010 indicated that he had purchased items such as "jawbreakers" and Snickers bars. The fact that he was purchasing such items raised a question about the veracity of his complaints of jaw pain. Ms. Browe took no action with respect to this information, but merely passed it along to Dr. Ali. Exhibit 3, Affidavit of Lisel Browe, R.N., ¶5.

20.     Ms. Browe did not provide any medical care or treatment to Mr. Oliver. Exhibit 3, Affidavit of Lisel Browe, R.N., ¶6.

21.     Ms. Browe never failed to follow through on any administrative task relating to Mr. Oliver's health care while he was at WVRJ and did not act with deliberate indifference to Plaintiff's medical needs. Exhibit 3, Affidavit of Lisel Browe, R.N., ¶6.

### David Cox

22.     With respect to the plaintiff's allegation that he requested a soft diet but was not provided one, Mr. Oliver was on a mechanical soft diet from May 5, 2009 until he was discharged from WVRJ in February 2010. Exhibit 1, Affidavit of David Cox, ¶ 11.

23.     David Cox do not receive any complaints about Mr. Oliver not receiving a soft diet during his incarceration and any special dietary requests would be reviewed and granted or

denied by medical staff. Notwithstanding, the meals served to all inmates at WVRJ are compatible with a mechanical soft diet, i.e. every inmate received a tray at meal times that would satisfy a mechanical soft diet. Exhibit 1, Affidavit of David Cox, ¶ 11.

24.     David Cox have never acted with deliberate indifference to Mr. Oliver's request for a mechanical diet and has never ignored his complaints regarding medical care or soft diet requests during his incarceration at WVRJ. Exhibit 1, Affidavit of David Cox, ¶ 12.

### III.     STANDARD OF REVIEW

Because this motion relies on "matters outside the pleading," i.e., the aforementioned affidavits, medical and grievances records as well as deposition testimony, these defendants move for summary judgment under Rule 56. Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). "When a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue is present only if a reasonable jury could return a verdict for the nonmoving party and a court should not consider irrelevant or unnecessary factual disputes. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A court must enter judgment against a party who fails to establish the existence of an essential element of his claim that he has the burden of proving at trial. Johnson v. Quinones, 145 F.3d. 164, 166-67 (4th Cir. 1998) (citing and quoting Celotex Corp., supra).

## IV.    ARGUMENTS

### A.    Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust all available administrative remedies prior to filing suit under § 1983. It provides in pertinent part, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Complete and proper exhaustion of all available remedies is a mandatory requirement that must be completed before the lawsuit is filed, regardless of the remedy that is sought, including monetary damages. Woodford v. Ngo, 126 S.Ct 2378 (2006); Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002), Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed.2d 958(2001). "Proper exhaustion" under Woodford entails completion of all the steps in the state administrative process, in accordance with the applicable procedural rules and deadlines. Woodford, 126 S. Ct. at 2386-87. Courts have no discretion to dispense of the exhaustion requirement in actions where the PLRA applies. Id. at 2382 (citing Booth, 532 U.S. at 739, 121 S. Ct. 1819 (2001). Therefore, a case must be dismissed where it is apparent that the inmate failed to properly exhaust before filing a lawsuit. Anderson v. XYZ Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005).

In Woodford, the plaintiff filed grievances, which were rejected as untimely because they were filed outside the required deadlines. Nevertheless, the plaintiff appealed up to the requisite levels before filing his lawsuit. The Court of Appeals for the Ninth Circuit found that the inmate exhausted his administrative remedies, but the United States Supreme Court disagreed, reversed the decision, and remanded the matter for prejudicial dismissal. There, the Court essentially held that filing grievances that are rejected as untimely, even though the plaintiff filed all the

necessary appeals, is a failure to exhaust administrative remedies. The failure to comply with the deadlines and procedures for exhaustion is not proper exhaustion. Consequently, a failure to file grievances or filing untimely grievances is failure to exhaust administrative remedies and failure to comply with the PLRA requirements. The case was dismissed with prejudice for failure to exhaust the administrative remedies.

Likewise here, this case should be dismissed with prejudice for failure to exhaust the administrative remedies. Mr. Oliver did submit a grievance regarding inadequate medical care while incarcerated at WVRJ, but he failed to appeal the determination that the issue was "non-grievable" through Step II of the grievance procedure, i.e. the final level of appeal. Mr. Oliver submitted an informal grievance on January 8, 2010, which was responded to by Captain Winston. Mr. Oliver was not satisfied with Captain Winston's response and he sent the informal grievance back to her on January 20, 2010, which became a formal grievance. On February 3, 2010, the determination made by Captain Winston was upheld. Mr. Oliver did not respond to or otherwise appeal this determination through the final level of appeal and therefore his grievance was terminated.

Due to this error on behalf of plaintiff, his claim must be dismissed. Plaintiff's claim is procedurally barred from litigation. Therefore, in accordance with Woodford, this matter should be dismissed *with prejudice*.

### B. Deliberate Indifference

Alternatively, the plaintiff has failed to establish a cognizable constitutional violation against these defendants. Under well-established case law, a plaintiff filing a claim of this type must prove deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976). The deliberate indifference standard describes the type of wantonness with which the defendant must have acted in order for the plaintiff to prevail in an Eighth

11

Amendment lawsuit concerning prison conditions, particularly medical care. Wilson v. Seiter, 501 U.S. 294, 302 (1991). This component is subjective so that, for a plaintiff to prevail, the evidence must demonstrate that the defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. The plaintiff may prove this subjective state of mind on the part of the defendant by the "usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842. A prison health care provider is not deliberately indifferent if he or she responds reasonably to the risks about which he or she knows. Brown v. Harris, 240 F.3d 383, 390-91 (4th Cir. 2001). Such an official is not deliberately indifferent simply for failing to take all actions or precautions that he or she could have taken or even should have taken. Id.

A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment except in extraordinary circumstances. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). Lastly, mere medical negligence in which a prison inmate is the victim does not rise to the level of a civil rights violation. Estelle, 429 U.S. at 106.

### Uzma Ali, M.D.

No rational finder of fact could determine that Dr. Ali violated the Plaintiff's civil rights. Essentially, the plaintiff must prove that this defendant, on a given occasion, failed to provide him with medical care that she knew the plaintiff needed and that such failure constituted a serious deprivation. The plaintiff alleges that Dr. Ali failed to adequately treat his jaw injury by

failing to properly treat his pain symptoms with pain medications and failing to arrange for surgical treatment and ensure that plaintiff received a soft diet.  The record before the court indicates that the plaintiff was seen and evaluated for his left jaw pain after sustaining an injury on May 3, 2009.  The first time Dr. Ali saw the plaintiff was on June 4, 2009.  At that time, Dr. Ali noted tenderness, prescribed Motrin for the discomfort and scheduled Inmate Oliver to be seen by an oral surgeon, Dr. Kevorkian.  Dr. Kevorkian ordered an MRI which was performed on June 23, 2009.  While initially Dr. Kevorkian recommended surgical treatment, he advised Dr. Ali that this surgery was purely elective and that Mr. Oliver's condition would not deteriorate if he did not receive the recommended surgery.  Based on Dr. Kevorkian's determination that the surgery was elective, and Dr. Ali's medical judgment, the plaintiff did not receive surgery for his jaw injury.  In addition, Dr. Ali made various adjustments to Mr. Oliver's pain medications, to include increasing the amount Mr. Oliver received.  Due to concerns that Mr. Oliver was attempting to hoard his medications, and coupled with the improvement of plaintiff's condition, Dr. Ali ultimately began to decrease the amount of pain medication.  Clearly, Dr. Ali's response was reasonable and she cannot be found to be deliberately indifferent if she responds reasonably to the risks about which she knows.  Notwithstanding, insofar as the plaintiff has any disagreement with Dr. Ali about the course of his treatment, such a disagreement does not constitute evidence of a constitutional violation. Assuming, *arguendo,* that at the most plaintiff's allegations against Dr. Ali constitute medical negligence, medical negligence in which a prison inmate is the victim does not rise to the level of a civil rights violation.  Estelle, 429 U.S. at 106

Further, plaintiff claims that he was denied a soft diet.  The medical records as well as the affidavit of Dr. Ali reflect that the plaintiff was on a mechanical soft diet from May 5, 2009 until he was discharged from WVRJ in February 2010.  In addition, Mr. Oliver did not complain to Dr. Ali that he was not receiving this special diet.  In fact, the medical records suggest that Mr.

Oliver was well nourished while under Dr. Ali and the medical staff's care.  Therefore, there is no factual basis for plaintiff's claim and therefore, Dr. Ali is entitled to judgment as a matter of law.

### Lisel Browe, R.N.

No rational finder of fact could determine that Ms. Browe violated the Plaintiff's civil rights. The plaintiff alleges Lisel Browe, R.N., was deliberately indifferent to his serious medical needs and that she failed to ensure that plaintiff receive surgical treatment for his jaw injury and recovery.  At all times relevant to this suit, Ms. Browe was the Health Services Administrator at WVRJ. As such, she did not provide any direct medical care or treatment to the plaintiff. Accordingly, Ms. Browe was not involved in the decision to refer Mr. Oliver to an outside oral surgeon.  The decision as to whether Mr. Oliver should receive surgical treatment for his jaw was made by the medical director at the facility.  Ms. Browe's only involvement with Mr. Oliver, however *de minimus*, was to inform Dr. Ali about information she received regarding Mr. Oliver and his canteen records at WVRJ which might have shed light on the extent of plaintiff's injury. Because Ms. Browe was not involved in direct patient care and treatment of the plaintiff, Ms. Browe was clearly not deliberately indifferent to the plaintiff's serious medical need and therefore her Motion for Summary Judgment must be granted.

### David Cox

No rational finder of fact could determine that David Cox violated the Plaintiff's civil rights.  Plaintiff alleges that Mr. Cox failed to provide him with a soft diet after sustaining an injury to his jaw.  As reflected in the medical records and the accompanying defendant affidavits, Mr. Oliver was provided a mechanical soft diet during his incarceration.  Notwithstanding, plaintiff never complained to Mr. Cox regarding this issue.  Further, any special dietary requests would be reviewed and granted or denied by medical staff and not by Mr. Cox.

In support of his claim that he did not receive a soft diet, plaintiff alleges that he received a food tray that contained the same items of food as other inmates.  Because the meals served to all inmates at WVRJ are compatible with a mechanical soft diet, plaintiff's tray would look similar to those that other inmate's without dietary restrictions received. Therefore, there is no factual basis for plaintiff's claim that Mr. Cox failed to provide him with a soft diet in violation of his constitutional rights and therefore, David Cox is entitled to judgment as a matter of law.

## V.     CONCLUSION

WHEREFORE, these defendants assert that there is no genuine issue of material fact with regard to the plaintiff's failure to exhaust his administrative remedies concerning the claims in this suit and, therefore, under the Prison Litigation Reform Act, defendants Browe, Ali, and Cox are entitled to judgment as a matter of law.  Alternatively, plaintiff has failed to prove deliberate indifference by defendants Browe, Ali, and Cox and therefore the defendants' Motion for Summary Judgment must be granted.

Respectfully submitted,

UZMA ALI, M.D.,
LISEL BROWE, and
DAVID F. COX

_____/s/_____
Elizabeth M. Muldowney
VSB#46387
Attorney for Defendants Browe, Ali and Cox
Rawls, McNelis & Mitchell, P.C.
1111 East Main Street, Suite 1701
Richmond, Virginia 23219
(804) 344-0038
(804) 782-0133 (Fax)
emuldowney@rawlsmcnelis.com

**Certificate of Service**

I hereby certify that on the 29th day of November, 2011, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will then send a notification of such filing to the following CM/ECF participants:

N/A

And I hereby certify that I have mailed the document by United States mail to the following non-filing user:

Donald R. Oliver
Inmate Number 1075734
Augusta County Correctional Center
1821 Estaline Valley Road
Craigsville, VA 24430

                                               /s/
Elizabeth M. Muldowney
VSB#46387
Attorney for Defendants Browe, Ali and Cox
Rawls, McNelis & Mitchell, P.C.
1111 East Main Street, Suite 1701
Richmond, Virginia 23219
(804) 344-0038
(804) 782-0133 (Fax)
emuldowney@rawlsmcnelis.com