CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED-for RKe

JUL 30 2012

JULIA C. DUDLEY, CLERK
BY: HMcDonad
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DONALD R. OLIVER,<br>    Plaintiff, | ) Civil Action No. 7:11-cv-00289<br>)<br>) |
| v. | ) MEMORANDUM OPINION<br>) |
| LISEL BROWE, et al.,<br>    Defendants. | ) By: Hon. Jackson L. Kiser<br>)     Senior United States District Judge |

Donald R. Oliver, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants Lisel Browe, Dr. Uzma Ali, and David F. Cox, who are all staff at the Western Virginia Regional Jail ("Jail"). Plaintiff alleges that defendants caused cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. Defendants filed a motion for summary judgment, and plaintiff responded, making the matter ripe for disposition. After reviewing the record, I grant defendants' motion for summary judgment.

I.

Another inmate punched plaintiff in a fight at the Jail on May 3, 2009, and plaintiff went to the Jail's medical department for left-jaw pain. A nurse prescribed Tylenol, 500 mg., and scheduled plaintiff to see the doctor. Dr. Hendershot ordered X-rays of the jaw, which showed no bony abnormalities, and a mechanical soft diet, which remained effective until plaintiff's transfer from the Jail in February 2010.[1]

Defendant Dr. Ali saw plaintiff during plaintiff's follow up visit with Dr. Hendershot. Plaintiff again complained of jaw pain in his left Temporomandibular joint ("TMJ"), and Dr. Ali noted that plaintiff's jaw appeared misaligned. Dr. Ali prescribed Motrin, 800 mg., and scheduled plaintiff to see Dr. Kevorkian, an oral surgeon. Dr. Kevorkian evaluated plaintiff on

---

[1] Dr. Hendershot is not a defendant to this action.

June 9, 2009, diagnosed him with "closed lock of the left TMJ secondary to trauma," and ordered an MRI for further evaluation.[2] Pursuant to Dr. Kevorkian's order, Dr. Ali prescribed plaintiff Motrin, Flexeril, and Lortab, which plaintiff began receiving on June 10, 2009.[3]

The MRI occurred on June 23, 2009, and showed plaintiff had a tear of the "left-intra-articular disc." By letter dated July 16, 2009, Dr. Kevorkian recommended surgical treatment "to reposition the disc, mobilize the joint, and allow it to free up."

Dr. Ali avers that she decided not to order TMJ surgery for plaintiff. Dr. Ali spoke with Dr. Kevorkian on August 13, 2009, to discuss the recommended surgery. Dr. Ali considered the surgery to be elective based on her conversation with Dr. Kevorkian. Dr. Ali did not believe that plaintiff's condition would deteriorate without surgery. Dr. Ali avers that the injury shown on the MRI is not a serious medical condition requiring surgical intervention although the jaw misalignment causes pain that can be treated with pain relievers.

Starting from June 10, 2009, when plaintiff began receiving pain killers, Dr. Ali increased the amount of Lortab and Vicodin plaintiff received based on his complaints of increased pain. However, Dr. Ali was concerned that plaintiff was exaggerating his symptoms in order to receive muscle-relaxing and narcotic prescriptions. Dr. Ali read in plaintiff's medical file that plaintiff tried to stealthily remove narcotic medicine from the pill distribution area on August 2, 2009, and defendant Brown told Dr. Ali that plaintiff bought hard, "fireball" and "jawbreaker" candy and a Snickers candy bar at the Jail's canteen. This information caused Dr. Ali to further question whether plaintiff actually suffered pain symptoms to warrant narcotic medicine or created a pretense to recreationally use or to distribute the narcotic medicine. Based

---

[2] Dr. Kevorkian is not a defendant to this action.
[3] Flexeril is a muscle relaxant made of cyclobenzaprine. Lortab is a pain reliever made of acetaminophen and hydrocodone, which, generally, are the same main ingredients in Vicodin.

on this information and plaintiff's improved jaw alignment, Dr. Ali discontinued Lortab on January 14, 2010, for "a two-day taper"[4] although plaintiff received Vicodin until January 22, 2010. Plaintiff received Naproxen, 500 mg., between January 29 and February 10, 2010, when plaintiff was transferred to another correctional facility.[5]

Brown was the Jail's Health Services Administrator while plaintiff was at the Jail. Brown did not have any direct involvement in plaintiff's clinical medical care. Brown avers that she was not involved in decisions to refer plaintiff to an outside oral surgeon or to receive surgical treatment. After Brown reviewed plaintiff's canteen records, Brown informed Dr. Ali that plaintiff purchased hard and sticky candies.

Defendant Cox, the Jail's Deputy Superintendent, did not receive any complaint about plaintiff not receiving a mechanical soft diet and any special dietary request would be reviewed, approved, or denied by medical staff. Dr. Ali avers that she has no memory of plaintiff complaining to her about not receiving a soft diet, and medical records show that his weight was 206 pounds when he arrived at the Jail in April 2009, 211 pounds in July 2009, and 214 pounds in December 2009. Cox avers that all meals served to Jail inmates are compatible with a mechanical soft diet.

II.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material

---

[4] Medical records reflect that a "two-day taper" means plaintiff was reduced from 10 mg. of Lortab each day to 5 mg. each day for two days. Plaintiff did not receive Lortab after these two days.
[5] The medical record reflects that plaintiff did not voice a complaint to medical staff about his jaw during an intervening sick call between stopping Lortab and starting Naproxen. Plaintiff received Naproxen on January 29, 2010, because he complained of jaw pain at his medial appointment that day.

facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

Even if there is no dispute as to the evidentiary facts, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). A court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v.

Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. See Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (same).

A.   NO ADMINISTRATIVE REMEDY WAS AVAILABLE TO EXHAUST.

Defendants argue that plaintiff did not exhaust administrative remedies for his claims. The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . ., by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and "applies to all inmate suits about prison life[.]" Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id.; Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative

5

process . . ., the process that exists on paper becomes unavailable in reality." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). An inmate's failure to exhaust is an affirmative defense that a defendant has the burden to prove. Jones v. Bock, 549 U.S. 199, 216 (2007).

The Jail had a formal grievance procedure called Standard Operating Procedure ("SOP") 16.02 while plaintiff was at the Jail. SOP 16.02 defines a "grievable" issue as "a good faith complaint involving some real or potential injury, injustice, or wrong having merit as a result of its unjustness, discrimination, or oppressiveness which clearly falls within the scope of the grievance/response procedure." (SOP 16.02 at 2.) A "non-grievable" issue is "a complaint which clearly does not fall within the scope of the grievance/response procedure regardless of its merit. . . ." For example, "action taken by non-jail facility personnel . . . does not fall within the purview of the grievance/response procedure." (Id.)

Cox reviewed plaintiff's grievance records and found only one grievance about the Jail's medical services. Plaintiff filed an informal grievance on January 8, 2010, stating:

> Medical Negligence: On [May 3, 2009,] I was assaulted by [another inmate]. At Dr. Kevorkian's request, MRIs were taken at [the Hospital] showing that my Jaw was fractured and that I have no TMJ, ultimately realizing that my jaw requires surgery. Dr. Ali has acknowledged over the last eight months that I am awaiting surgery. I was told by the head nurse that I was waiting for D.O.C. for my surgery. On [December 30, 2009,] I notified the medical.

(Pl.'s Informal Grievance (no. 19-2 at 9.) A Jail Captain determined the issue was non-grievable and advised plaintiff that he could appeal the non-grievable determination to Step I. The Captain specifically noted:

> Complaints regarding the substantive medical care are outside the scope of the grievance procedure because it relies on the jail staff to make recommendations regarding the specific medical treatments provided to the inmate[]s. . . . The administration of the Jail does not have the expertise to determine the adequacy of the medical care provided. The treatment provided to the inmates is the sole discretion of the Jail Physician. The specific type of medical care provided is

not governed by the policies and procedures of the Jail.

(Informal Grievance Resp. (no. 19-2 at 10).)

Plaintiff's claims involve the medical care he received at the Jail, which per Cox's affidavit, includes providing a mechanical soft diet. Thus, SOP 16.02 defines plaintiff's instant claims as non-grievable issues, and plaintiff could not have sought administrative review of his medical claims. Accordingly, no administrative process was available to exhaust for plaintiff's complaints about the medical care and mechanical soft diet, and § 1997e(a) does not bar plaintiff's claims. See Kaemmerling v. Lappin, 553 F.3d 669, 675-66, 384 U.S. App. D.C. 240, 246-47 (D.C. Cir. 2008) ("Requiring an inmate to exhaust an administrative grievance process that cannot address the subject of his or her complaint would serve none of the purposes of exhaustion of administrative remedies.").

B.  PLAINTIFF FAILS TO ESTABLISH THAT DEFENDANTS VIOLATED THE EIGHTH AMENDMENT.

A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need to state a claim under the Eighth Amendment for the unconstitutional denial of medical assistance. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position."

7

Miltier, 896 F.2d at 851-52. A health care provider may be deliberately indifferent when the treatment provided is so grossly incompetent, inadequate, or excessive as to shock the conscience or is intolerable to fundamental fairness. Id. at 851. A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, such as loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee, 797 F.2d at 181-83.

Plaintiff fails to establish Dr. Ali's deliberate indifference. Assuming without deciding that a tear of the "left-intra-articular disc" is a serious medical need, the record establishes that Dr. Ali treated plaintiff's jaw problem with a combination of diagnostic tests, referral to a specialist, and various narcotic and non-narcotic pain medications. Dr. Ali determined that surgery was not necessary after observing plaintiff's jaw alignment improve over time with pain medications. Dr. Ali bases her conclusion on her medical expertise after consulting with another physician, treating plaintiff, and reviewing his medical record. Plaintiff preferred to have Dr. Ali order jaw surgery while he was at the Jail, but plaintiff's disagreement with Dr. Ali about the course of treatment does not state a § 1983 claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Plaintiff's allegations that Dr. Ali made an incorrect medical decision by modifying plaintiff's various prescriptions may reflect a tort claim for negligence, but claims of medical malpractice and negligence are not cognizable in a § 1983 proceeding. Estelle, 429 U.S. at 105-06. See Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence but not a claim under the Eighth Amendment). Similarly, plaintiff fails to establish that Dr. Ali was ever informed of plaintiff's

mechanical soft diet complaints or that Dr. Ali was subjectively aware of such a complaint. Accordingly, Dr. Ali is entitled to summary judgment.

Plaintiff also fails to establish an Eighth Amendment claim against Brown or Cox. Plaintiff fails to show that Brown or Cox was personally involved with a denial of treatment, deliberately interfered with Dr. Ali's treatment, or tacitly authorized or were deliberately indifferent to Dr. Ali's apparent, unconstitutional misconduct. Miltier, 896 F.2d at 854. Nothing in plaintiff's medical treatment evinces how a lay person would understand that Dr. Ali could be deliberately indifferent by monitoring plaintiff's jaw alignment and prescribing various pain medications. Plaintiff does not establish that the Jail provided him food that he could not eat, and no clinical signs or symptoms of malnourishment exist in plaintiff's medical record. Dr. Ali managed plaintiff's pain symptoms with various narcotic and non-narcotic pain relievers if he ate foods that were harder than plaintiff preferred, including the candy bar and jawbreaker candies he purchased from the commissary. Accordingly, plaintiff fails to establish that a defendant inflicted cruel and unusual punishment in violation of the Eighth Amendment.

III.

For the foregoing reasons, I grant defendants' motion for summary judgment. Because plaintiff's requested discovery either is not sufficiently described or does not relate to any deficiency in the record, defendants' motion to stay discovery is granted and plaintiff's motion for subpoenas is denied.[6]

---

[6] Plaintiff served defendants with his First Interrogatories and First Requests for Production of Documents on November 16, 2011. Defendants filed a motion for summary judgment on November 29, 2011, that relied on attached documents. The court stayed plaintiff's discovery requests because the attached documents provided a lot of the information plaintiff requested, but the court gave plaintiff the opportunity to request additional discovery not addressed by the documents. Plaintiff filed "Second Interrogatories," to which the court ordered defendants to respond. The court granted plaintiff an extension of time to review defendants' answers to interrogatories and respond to their motion for summary judgment, but the court denied plaintiff further leave for discovery unless he

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff and counsel of record for defendants.

**ENTER:** This 30th day of July, 2012.

                                                */s/ Jackson L. Kiser*
                                          Senior United States District Judge

---

showed by affidavit that he could not present facts essential to justify his opposition to the motion for summary judgment.

    Plaintiff filed an affidavit listing the records or interrogatories he still wanted, but he did not show good cause, explain why he did not request this information after receiving defendants' motion for summary judgment, and why the information was necessary to the elements of this action. Plaintiff also filed a motion for a subpoena to force Dr. Kevorkian to answer interrogatories, but plaintiff did not provide the court or defendants with a copy of the proposed questions. See Fed. R. Civ. P. 31(3) (requiring plaintiff to serve the written questions on every other party). Furthermore, Dr. Kevorkian's responses would not be probative of Dr. Ali's alleged deliberate indifference of plaintiff's jaw injury. Moreover, court cannot pay the expenses on plaintiff's behalf, and plaintiff asks the court to deny the request if the court cannot pay.